v. William H. Cosby Jr., No. 171505, AIG Property Casualty Co. v. William H. Cosby Jr. May it please the Court, My name is Michael Aylward. I rise today to speak on behalf of the Appalachian AIG Property Casualty Company. With the Court's permission, I'd like to reserve one minute for rebuttal. You may have it. Thank you, Your Honor. Your Honor, the issue presented by this case is actually quite straightforward. If a policy excludes coverage for libel or slander arising out of alleged sexual misconduct, does an insurer have a duty to defend lawsuits in which women allege that they were branded as liars in retaliation for alleging that the insurant had sexually assaulted them? This Court declared in the Brazos-Sporting Woods case years ago that when you look at arising out of, you start with the question of what did that injury derive from? In this case, the injury is clearly derived from Mr. Cosby's statements that the women were liars. Now, Mr. Cosby makes the argument that the exclusion should not apply because the injuries were caused by words, not groping. Respectfully, he's missing the point. This is an exclusion for personal injury. In this case, personal injury includes defamation, libel, or slander. Groping does not cause defamation, libel, or slander. It's caused by words. Now, there's nothing inherently defamatory about a given word. I could say, I do not know you, and that's not defamatory. But if that statement is made in the context of an accusation that I wait to, the implication is not only that you're a liar, but that you're an opportunist who's concocting a story for personal gain. And that's exactly what's happening in this case. I would ask the Court to contrast the facts in this case with two other rulings. One is the HS Services case from Ninth Circuit that Mr. Cosby has focused on in his brief. The other is a ruling of the Rhode Island Supreme Court, a case called Howard v. Guidant. They're both cases where you have this dual issue of an arising out of exclusion and a defamatory claim. Now, in HS Services, an officer of the corporation was terminated. Months later, he made a statement to other customers that the company was in financial trouble. And in retaliation for that, the president of the company said, we fired him because he was dishonest. Now, he sued for defamation and wrongful termination. Now, that policy had an exclusion for injuries arising out of employment-related practices. And the insurer argued that the defamation claim arose out of the terms of employment. The Ninth Circuit disagreed. It said, although the fact that the statement was made months later didn't matter, the content of the statement concerned his competition after he left. Not anything he did as his employee at that point didn't or lacks of. Counsel, I know in your brief, you referred to these cases. But in my view, my tentative view, Massachusetts law governs this case. It is not that helpful to look to other jurisdictions. I'm not trying to read California law, Your Honor. I'm simply trying to illustrate the difference. Because he voted Iowa. I know, but do it with Massachusetts cases or First Circuit cases that apply Massachusetts law, please. I think probably the most important is European and Brazil sporting goods. Although, that builds on substantial jurisprudence from the SGC and the appeals court. Look, I understand the trial court in this case said, look, there's a spectrum of arising under it's not probable cause. It's maybe it's between but for and probable cause or maybe not even but for. And because of that spread, there's some ambiguity out of the arising under. So would you respond to that, please? And then respond to the other argument which is based on the additional language in the director and officer. As to your first inquiry, as this court declared in Brazos, the question is was it derived from? Does it relate to? Is it originating from? What Judge Mastroianni found in the district court was that the original sexual assaults occurred decades ago and that was too attenuated. Respectfully, the issue is not sexual assaults that occurred in the 60s and 70s. It's Cosby's defamation. That's what triggered the coverage. And the issue is did the allegations of what did the slander of these women arise out of defamatory statements that had sexual content? That was the reason I was alluding to the Rhode Island case because the defamation statement there was clearly defamatory in content. And if you look at your decision in Brazos, that was the case where the city of New York had sued a firearm manufacturer for over-marketing guns. It's actually similar to the activist case that came down recently in California. And the argument was that the marketing of guns arose out of the insurance product. Now, the events at issue in that case had been going on for months and years before the lawsuit was filed. And yet this court ruled that they clearly arose out of. The issue is not, as Judge Mastroianni found, the amount of time that elapses. It's whether there's a clear causal link from the excluded cause, the sexual misconduct that's alleged here, and the resulting defamation. We submit in this case that the slander of the women immediately followed their allegations alleging that Cosby had raped and sexually assaulted them, and clearly, therefore, arose out of those events. As to the issue of ambiguity, Judge Lynch, their argument is not particularly that this language is ambiguous, but it should have been written better. And they point to language in the excess policy where there was exclusion for charitable board directors and trustees. Let me make two points about that. First, if you look at the scope of coverage that that exclusion is directed to, it's different. That wasn't simply an exclusion for assaults. It was exclusion for sort of peripheral claims related to assaults, like negligent hiring, negligent supervision, not preventing things from happening. Now, frankly, in the case law that we see in this area, those are where courts have had trouble finding causes. So it made perfect sense for AIG to add Belt and Suspenders language, adding that additional protection in light of the type of risks that were dealt with in that exclusion. But something isn't ambiguous simply because it could have been written more clearly. The issue is whether this exclusion on its face is clear. I mean, I'm going to write a valentine next week. If I was really clever and would start, shall I compare thee to a summer's day? You don't have to be eloquent to be clear. I may not be Shakespeare, but the question will be, is the intent of my valentine, is the sentiment clear enough? So an argument, I'm glad to hear that your significant other will get a valentine. It's short, at least. A very short one, yes. But one could view this as we're supposed to look at every clause within the insurance contract, and there is this additional language in the director and officer that seems to, you could say it's Belt and Suspenders, but you could also say, Well, what does that do to the arising out of clause? If the two actually have to each mean something, arising out of cannot be assumed to be within the other clause. It has to mean something else. And that is in and of itself a source of ambiguity. And respectfully, Your Honor, the ambiguity has to flow from the language itself. It's not proper to look at a different exclusion for a different purpose and say, Aha, they added a few words here. The question is, is an exclusion for libel or slander arising out of alleged sexual misconduct ambiguous? Libel or slander is not an issue. More than 30 courts in Massachusetts have interpreted arising out of without fighting ambiguity, and there's surely no issue that what's alleged in the underlying cases is sexual misconduct. Where is the ambiguity there? I would also point out that the additional language that's in the excess policy is a gloss that most of the courts that have looked at the conventional arising out of language have found. This court in process and countless state decisions have ruled that arising out of means originating from, going out of, falling from, incident to, relating to. That's the kind of belt and suspenders language that's in the excess policy. So I don't see how this court could find ambiguity with respect to the meaning of arising out of when dozens of Massachusetts courts, including this court, have already interpreted as having that specific meaning. So respectfully, we do not believe that this language is ambiguous or that the inclusion of somewhat different language for a different purpose and a different policy is a proper basis for fighting ambiguity. The only other two arguments are in the brief. There is no substantive allegation that does not link to sexual misconduct that's alleged or that exists that would be a basis for avoiding this exclusion. And there's no basis for imposing judicial estoppel in this case. This is a situation where we did argue California law in California, but the statute requires that in California. We also argued that in our view, the law of California is consistent with Massachusetts. And if you read the activist case that came down a few months ago from the California Court of Appeal, it's absolutely all forged with Massachusetts law. So unless the court has any questions, we would ask the court to reverse the ruling of the district court and enter judgment for AIG. Thank you for your time. Thank you. Good morning, Your Honors. May it please the court, correct passage for Mr. Cosby. I would like to start with one of the points of judgment that you raised, which is what the impact is of the other exclusions. Massachusetts law is clear that you cannot do what AIG just asked you to do, which is to disregard all of the rest of the policy and interpret this exclusion in a vacuum in isolation. That's Massachusetts law. It's California law as well. Now, I was interested in the reply brief when AIG offered for the first time an explanation for why the DNO exclusion on sexual misconduct was broader and different, which is why Massachusetts law explicitly allows belt and suspenders. If Massachusetts law permitted words to be belt and suspenders, that would be a different argument. Yes, but I'm afraid Massachusetts law explicitly allows belt and suspenders. There are two First Circuit cases. One applies Massachusetts law. Judge Sellier wrote it. He also referred to Judge Sutton's opinion in the Sixth Circuit. We have a Judge Torea opinion applying Rhode Island law. And then we have a State Appeals Court decision. Your Honor, I'm aware of the decisions that do this, but they don't say you can interpret exclusions and ignore words in one exclusion and interpret it in another. No, but they say belt and suspenders does not create ambiguity. I don't think belt and suspenders does create ambiguity. I think belt and suspenders is designed to provide clarity on something that otherwise might be ambiguous in itself. And that's why I said, and we cited the Metropolitan Life case by the Massachusetts Supreme Court that requires you to look at the policy in its entirety in interpreting phrases in the policy. And if we were just talking, and this is why I found the argument in the reply brief interesting, because AIG would have you believe that there's only one exclusion in its two policies that uses different words. And that's not true at all. The policies are replete with exclusions that use words in addition to arising from or arising out of. And they use words like directly or indirectly. That would provide clarification here. Now, it's also interesting to me when we were discussing this in the parts of this argument, I actually thought they were making arguments that we would make. And the reason I say that is when you make a statement like was just made, that the injuries clearly arise from Mr. Cosby's statements that the women are liars. That's the genesis of the injuries here. And that's what the case law requires you to look at. This exclusion does not apply to lawsuits simply because those lawsuits contain allegations of rape or harassment or sexual abuse. The exclusion applies to an injury that arises from sexual abuse or sexual assault. These women claim no such injuries in their lawsuits. They can't, because those claims would have been made 30 or 40 years ago. The injuries they do claim arise out of statements they say are defamatory and untrue, that for the most part were made by representatives of Mr. Cosby, including a lawyer in California. So when we look at this and we look at the test that's applied here, and I think it's interesting because Judge Young said in the A&W case that we cite, there is no bright line test. And we certainly agree with that. Yeah, you can agree with that, but that does not in and of itself create ambiguity. No, it doesn't. Actually, our position is that we don't need ambiguity to prevail here. So let's be clear. I think AIG's best position would be there's ambiguity and they would lose in that event. Well, the trial judge found ambiguity. So are you disavowing his decision? No, I'm not, because I think that when he did it, he did it in a context which was recognized. It's sort of what the Peterborough court did, where the Peterborough court found ambiguity on arising out of in the context before it. And I think that all the law requires that you look at how the policies and the language apply in the particular context in which the issue arises. And so, yes, Judge O'Connell concluded that we had a reasonable interpretation, and so did the trial court below conclude that we had a reasonable interpretation. Now, I do think, as a minimum, our interpretation is reasonable, and I say that because I think on the face of the language. Now, I obviously agree that you can say they're ambiguous in this context because of the spectrum and the fact that the courts have said you do a case-by-case approach to it. And so I think both judges took a case-by-case approach. They both reached the same conclusion. And I certainly acknowledge that the trial court here was deferential to Judge O'Connell's decision in terms of her application of California law. And the court below did note in a footnote that if he had to resolve a conflict, he would apply Massachusetts law. And we think that, for purposes here, the results should be the same either way. So let me be clear about that. But I think, and it's interesting because we like Brazos as well. And that was the case AIG starts with, and obviously it relied on Ricciatelli. And we believe both of those cases provide the appropriate guidance for this court. But Brazos said, you're compelled to consider the source from which the injury arose. The injury at issue here is defamation, the harm to reputation. The source of that injury is the statements in 2014 and 2015. If these women were injured by defamation, it was in those statements, in those years. It was not in the assaults that were alleged to take place 30 or 40 years before. Those defamatory acts, if they were defamatory, didn't happen 40 years ago. The assaults didn't happen in 2014 and 2015. So if you're indeed going to do what the courts require in Brazos to do, to look at the source from which the injury complained about here arises, the injury complained about here is the alleged defamation, not the assault. The injury complained about here is whether you're calling someone a liar or denying that the assaults took place or saying that you didn't know them or disputing whether you gave them a drug or not. Those injuries could not have happened before the statements were made. But you still go back. The statements, if they hadn't made the initial claims against him, he would not have responded to those claims. And those claims were because of the alleged sexual assault. And doesn't that rise out of... No, I don't think it does, with all due respect. And the reason I say that... Why not? Well, it's certainly a predicate event. Mr. Cosby meeting them is a predicate event as well. Their being where they were at the time is a predicate event. They're all parts of that chain of causation, somewhere between but for and proximate cause. I certainly agree with that. And that's why Peterborough, I think, is particularly instructive because the Peterborough court was clear that this standard arises out of, in other words, does not capture all events between which a causal connection may be drawn. We're not saying that there's no relationship whatsoever between these alleged acts. First of all, there's a dispute as to whether these acts even took place. There's a dispute over that. If those acts did take place, let's start with that. Remember, we're talking the dignity to defend here. We're not talking a duty to indemnify. The case law recognizes a difference between those for purposes of arising out of. And so when we're dealing with a duty to defend, we're looking at... And that was Ruggiero, by the way. The court found, and that was the case involving the ambulance, where the ambulance came, there was an accident, another ambulance came. And the court found for duty to defend, there was a potential for coverage not withstanding the arising out of language, but no duty to indemnify. Now, we're not at the duty to indemnify stage here. We're at the duty to defend stage and the potentiality standard and if there's even the slightest possibility that there's an attenuation here that's sufficient, then we win for purposes of the duty to defend. Does the timing make any difference? Let's assume for a minute that we didn't have this huge number of years between his alleged acts and the defamation. Let's assume that it's really close, that the timing is within years. Maybe even the statute of limitations hadn't died. Would that make a difference either way? I think it depends, Your Honor. And the reason I say that, and this is why AHE was fascinated with the Howard case, the Rhode Island case, and I know it doesn't apply to Massachusetts law, but that was the case where the priest circulated a letter and was sued. The suit was for both sexual assault and defamation in one lawsuit. That letter or that statement that was made was five months after the assault, so much closer in time. And the Rhode Island court obviously went the direction that AIG would like this court to go, which is to say it all arose out of sexual assault. But there's a material difference there, not just the time period. That was much shorter. But in that circumstance, there was a requirement as part of the resolution that that statement be made by that priest. That was part of the attempt to resolve the assault claim. There is no argument here that these statements had anything to do with an attempt to resolve the assault claim, or that they arose out of the assault claim as such 40 years ago. But not one of these women is claiming that they have a right to seek recovery for assault. And we're not here talking about whether assault is covered or not. There certainly are some cases, as I suspect this court is aware, where Mr. Cosby is in fact charged with assault. That's not these cases. And whether these women should have a right to assert assault or not is not the issue we're here about today. We're here about whether statements made by Mr. Singer in California in particular and a publicist elsewhere that were made in 2014 and 2015 have that sufficiently close connection. When you have policy language in both policies, it's not just the excess policy. You have a pollution exclusion that uses much broader language. You have a sexually transmitted disease exclusion that uses, and this isn't a primary policy. It's the best evidence of what they could have said. Personal injury resulting directly or indirectly from. We have a very different argument if they said that here. And if they can say it for sexually transmitted diseases, they can certainly say it for sexual assault. And then we wouldn't have the same argument about where are we on the continuum. I think that Howard case in Rhode Island was a much different spot on the continuum than we are. And it's interesting because the best persuasive authority to look at these Rhode Island cases, in America, the Porter decision a year later from the Rhode Island Supreme Court, they emphasized much like we saw here in Brazos and Lichitelli, that it's the nature of the injury suffered and how the torque fuser inflicted the injury that counts. Now that's Brazos and that's Lichitelli. And if you look at the nature of the injury, it's defamation. If you look at how it was inflicted, it was by the statements in 2014 and 2015. Now there's one other thing that's not clear to me here in terms of what AIG is doing. And this, I'm going to go back to the judicial estoppel point for a moment because I recognize that the trial court is an abuse of discretion standard on that. But I also recognize that the trial court didn't have all the facts that are before this court today on the question of judicial estoppel. And when I went back to look at what AIG has said, I was frankly troubled by what happened because in California, they told Judge O'Connell there was no conflict in the laws. After losing there, they told the trial court below there was a conflict. Then in the Pennsylvania proceedings that you looked at, they said, and they actually quoted it in their reply brief, that there was no conflict between the laws of Massachusetts. You wouldn't be arguing this if you didn't think California law favored you over Massachusetts law. No, I think that you're right. Then why are we listening to this? With all respect, that's not why. I think California law, actually forgetting the choice of law analysis here, does apply. And the reason I say that is because the homeowners policy has two types of coverage. If we were fighting over a loss to a residence in Massachusetts at the Cosby home, I think it's probably Massachusetts law. But the liability section is worldwide coverage. And the excess policy has nothing to do with Massachusetts. There are 20 locations referenced in the excess policy. And the excess policy was brokered in California, with the California broker, with an insured address listed in care of that California broker. Now, California, under the civil code section we talked about in sight, clearly would apply California law. It has an interest in applying California law in those circumstances. And as we indicated here, in the W.R. Gray's case, the Massachusetts Court of Appeal case, under similar circumstances, obviously not a sex assault case, but similar circumstances on policy issuance and negotiation, that court concluded, if you applied the analysis, it would be California law. So we're not arguing California law because we think we win. We do. We're arguing California law because we think under Massachusetts choice of law principles, you would get to California just like you would under California principles. We argue estoppel because we don't think it's appropriate for a party to go to one court and say there is no conflict, go to the trial court here and say there is a conflict, go to Pennsylvania and say there is no conflict, and then come back to this court and say there is a conflict. Now, I don't understand how a party is permitted to do that, forcing us to address variations of conflicting arguments in different courts just because they're judging by the results that were obtained when they litigated the issue. So that's why we go to estoppel. That's why we go to California law. We think we win under both, Your Honor. Can I ask a question? Why did you bring this suit in federal court rather than state court? We didn't bring the AIG suit, Mr. Cosby, three different times in three different federal courts. I have no idea why they did that. Okay. Thank you. Two brief points. To your question, Judge Lynch, we had to bring those actions to get jurisdiction of the women. They lived in those states. They couldn't always suit in one action. To Judge Saul's question, it's not the duration of time that matters. The question is, is there a continuous causal connection between the excluded cause and the resulting injury? Or is there some intervening event that breaks the chain of causation? In Briciatelli, there was an intervening event, and it occurred within minutes of the excluded cause. The guy jumped out of the car after having an accident and beat up the other motorist. The court found, therefore, it didn't arise out of the use of the car. It was a different cause. Here, there's a clear causal link between the alleged sexual assaults, the women coming forward and accusing Cosby, Cosby calling them liars, and the defamation lawsuits. But it isn't that clear, is it? Because simply in response to the claims of the women of his improper conduct, he didn't have to attack their veracity generally and call them a bunch of liars. He simply could have denied the charges and waited to see what happened. So this is a case that is partway between the Rhode Island fight and a case in which the causal connection is clear. It's a halfway case. Respectfully, I disagree with you, Your Honor. When you deny something, you're implicitly calling somebody a liar. You may have called them goddamn liars, but the injury was there. The implication was that they were lying and making false accusations. Well, the implication is that you don't have a case. There isn't necessarily an implication that you were suing in bad faith. But when you make an argument, when you make a response that the plaintiff is a liar, or in this case, the accuser is a liar, you do clearly go beyond the mere denial, which is consistent with good faith. Let me only make this point. At trial, these women are going to have to prove that they were raped and sexually assaulted. Without those allegations in the underlying suits, there is no defamation, and therefore clearly it arises out of an excluded cause of action. Thank you.